1  BRIAN R. STRANGE (SBN 103252)
2  *lacounsel@earthlink.net*
   GRETCHEN CARPENTER (SBN 180525)
3  *gcarpenter@strangeandcarpenter.com*
   STRANGE & CARPENTER
4  12100 WILSHIRE BLVD., SUITE 1900
   LOS ANGELES, CA 90025
5  TELEPHONE: (310) 207-5055
   FAX: (310) 826-3210
6
   HERNAN D. VERA (SBN 175149)
7  *hvera@publiccounsel.org*
   PATRICK M. DUNLEVY (SBN 162722)
8  *pdunlevy@publiccounsel.org*
   MAGDALENA R. BORDEAUX (SBN 195671)
9  *mbordeaux@publiccounsel.org*
   PUBLIC COUNSEL
10 610 SOUTH ARDMORE AVE
   LOS ANGELES, CA 90005
11 TELEPHONE: (213) 385-2977
   FAX: (213) 385-9089
12
   Attorneys for Plaintiff Kathleen Kennedy
13

14          UNITED STATES DISTRICT COURT

15      FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 KATHLEEN KENNEDY, on behalf of       Case No.
17 herself and all others similarly situated,   **CV11  04635** DDP (AGRx)

18          Plaintiff,                    **COMPLAINT FOR: (1) BREACH
19                                         OF CONTRACT; (2) VIOLATION
                                           OF THE ROSENTHAL FAIR
20          vs.                            DEBT COLLECTION PRACTICES
                                           ACT; (3) VIOLATION OF THE
21                                         UNFAIR COMPETITION LAW; (4)
   WELLS FARGO BANK, N.A., d/b/a          BREACH OF THE COVENANT OF
22 WELLS FARGO HOME                       GOOD FAITH AND FAIR
   MORTGAGE and DOES 1-10,                DEALING; (5) NEGLIGENCE;
23                                         AND (6) PROMISSORY
           Defendants.                    ESTOPPEL**
24
25                                         **(Class Action)**
26                                         <u>JURY TRIAL DEMANDED</u>
27
28

─────────────────────────────────────────
        Class Action Complaint; Demand for Jury Trial

1    Plaintiff Kathleen Kennedy, on behalf of herself and all others similarly
2  situated, alleges the following upon information and belief based upon personal
3  knowledge.

4  **I.    INTRODUCTION**

5    1.    This Court has subject matter jurisdiction over this action under 28
6  U.S.C. § 1332(d)(2).

7    2.    The Home Affordable Modification Program ("HAMP"), introduced
8  in February of 2009 as part of President Obama's Making Home Affordable
9  Initiative, was intended to modify three to four million mortgages by the end of
10 2012.  As of February 2011, only about 550,000 permanent loan modifications
11 were in place.[1]

12   3.    HAMP was initiated to aid the millions of homeowners who are
13 struggling to pay their mortgages due to the economic downturn and unanticipated
14 drop in property values that have occurred during the past few years.  Banks that
15 received federal funding from the Troubled Asset Relief Program ("TARP") are
16 contractually obligated to participate in HAMP.  Under HAMP, banks are
17 required to offer loan modifications to eligible borrowers to prevent foreclosures
18 and allow them to keep their homes.

19   4.    Defendant Wells Fargo Bank, N.A., d/b/a Wells Fargo Home
20 Mortgage ("Wells Fargo"), received $25 billion in TARP funds in 2008.  In
21 exchange for the funds, Wells Fargo agreed to participate in HAMP.

22   5.    Plaintiff Kathleen Kennedy is a California resident who faced
23 unexpected expenses and had trouble making her mortgage payments.  She was
24 eligible for a HAMP loan modification for her Wells Fargo-serviced home
25 mortgage and diligently cooperated with Wells Fargo to obtain a permanent loan
26 modification.  Ms. Kennedy was offered, and accepted, a Trial Payment Plan

27 ────────────────
   [1] February 2011 Servicer Performance Report, available at
28 http://www.treasury.gov/initiatives/financial-stability/results/MHA-
   Reports/Documents/Feb%202011%20MHA%20Report%20FINAL.pdf .

1  ("TPP"). She complied with her responsibilities under the TPP, but Wells Fargo

2  refused to convert that plan to a permanent modification.

3       6.     Plaintiff's experience with Wells Fargo is one that has been shared by

4  hundreds of thousands of homeowners struggling to pay their mortgages. Despite

5  agreeing to follow the HAMP guidelines in exchange for billions of dollars in

6  taxpayer TARP funds, Wells Fargo has repeatedly and systematically flouted

7  HAMP guidelines, and has intentionally misled thousands of homeowners in a

8  loan modification process that amounts to little more than a black hole.

9  Homeowners who request to be evaluated for a modification under HAMP

10  routinely face unexplained delays, and go months with no communication from

11  Wells Fargo after providing all the information it requests. Homeowners who

12  attempt to contact Wells Fargo by telephone are placed on hold for hours and are

13  transferred back and forth between different representatives, who typically

14  provide conflicting information and instructions. Worse yet, almost without fail,

15  homeowners mail or fax requested information to Wells Fargo (often by certified

16  mail), only to be falsely told by Wells Fargo that it did not receive the requested

17  information.

18       7.     Many homeowners are told that they qualify for a trial period plan,

19  but are never sent an official trial plan agreement. Wells Fargo regularly tells

20  homeowners they qualify for a trial payment, orally or via e-mail, tells them the

21  amount, and tells them to begin paying, but never sends a written trial plan

22  agreement. In such instances, even after the homeowner makes the trial

23  payments, Wells Fargo later denies that the homeowner was ever eligible for a

24  trial plan, or the HAMP program. For those who are fortunate enough to receive a

25  written HAMP trial plan agreement, and who comply with all terms of the trial

26  plan, Wells Fargo routinely denies permanent modification, without justification

27  or the requisite written notification.

28       8.     Simply put, Wells Fargo intentionally has set up its loan modification

program to fail.  It instituted a program in order to feign compliance with HAMP, but has never had any intention of allowing widespread modification for homeowners in need.  The statistics reflect this reality.  In February 2011, the HAMP Servicer Performance Report reported that Wells Fargo had initiated only 219,424 HAMP trial modifications nationally since HAMP's inception, and that out of that number, only 77,402, or about 35 percent, had received permanent loan modifications.  Out of the 219,424 HAMP trial modifications started, only 15,379, or 7 percent, were in active trial modifications as of February 2011.  Based on these figures, the conclusion follows that over 100,000 Wells Fargo borrowers were approved for trial modifications but did not receive permanent loan modifications.

9.     Plaintiff Kathleen Kennedy therefore brings this suit on behalf of herself and all similarly situated borrowers in the nation to challenge the failure of Wells Fargo to honor its agreement under HAMP to modify mortgages and prevent foreclosures.

## II.     JURISDICTION

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the class are citizens of a state different from Wells Fargo.

11.    This Court has personal jurisdiction over the parties in this action because Wells Fargo is headquartered in California, is licensed to do business in the state of California, and otherwise conducts business in the state of California.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the wrongful and unlawful practices are alleged to have been committed in this District; Wells Fargo resides in California and in this District within the meaning of 28 U.S.C. § 1391(c); and Wells Fargo regularly conducts business in this District.

III.   **PARTIES**

13.    Kathleen Kennedy is, and at all times mentioned herein was, a resident of Hawthorne, California.  Plaintiff is the sole owner of a single-family home in Hawthorne, California, and the home is her principal place of residence.

14.    Wells Fargo is and at all times relevant hereto was a mortgage lender headquartered in San Francisco, California, and doing business nationwide.

15.    The true names and capacities of the Defendants sued herein as Doe Defendants 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

IV.   **FACTUAL ALLEGATIONS**

A.      **The Foreclosure Crisis**

16.    For the past three years, the United States has been in a foreclosure crisis.  Approximately five million homes have been foreclosed since 2009, and the Federal Reserve expects over four million more foreclosures by 2012.

17.    The foreclosure crisis "continues unabated," as the Congressional Oversight Panel stated.  "The number of foreclosures remains extremely high, with approximately 250,000 foreclosure starts and over 100,000 foreclosure completions per month."[2]

B.      **HAMP**

18.    Congress passed the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201, *et seq.*, on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115, on February 17, 2009 (together, the "Act").

---

[2] Congressional Oversight Panel, *December Oversight Report: A Review of the Treasury's Foreclosure Prevention Program* (Dec. 14, 2010) (available online at http://cop.senate.gov/documents/cop-121410-report.pdf).

19.   The purpose of the Act was to grant the Secretary of the Treasury authority to restore liquidity and stability to the financial system, and to ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C. § 5201.

20.   The Act granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, or TARP.  12 U.S.C. §§ 5211, *et seq.*  Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions.  *Id.*  Congress allocated up to $700 billion to the Treasury for TARP.  12 U.S.C. § 5225.

21.   The Act further mandates, with regard to any assets acquired by the Secretary of the Treasury that are backed by residential real estate, that the Secretary "shall implement a plan that seeks to maximize assistance for homeowners" and use the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." 12 U.S.C. § 5219. The Act grants authority to the Secretary of the Treasury to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." *Id.*

22.   On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency created the Making Home Affordable ("MHA") initiative to help at-risk homeowners avoid foreclosure by restructuring their mortgages.

23.   The Home Affordable Modification Program, or HAMP, is the portion of the MHA initiative that provides mandatory directives for implementation, and the portion with which Wells Fargo has not complied. HAMP creates a uniform loan modification protocol and provides financial incentives for participating servicers to modify loans.  The Treasury Department has allocated at least $75 billion in federal funds to HAMP, of which at least $50 billion is TARP money, to keep up to three to four million homeowners in their

1    homes by 2012.

2         24.    According to the Making Home Affordable Program Servicer

3    Performance Report for February 2011, there were about 1.4 million HAMP-

4    eligible delinquent borrowers in the United States as of February 28, 2011.

5              **C.    Wells Fargo's HAMP Obligations**

6         25.    Because Wells Fargo accepted $25 billion in federal funds, it was and

7    is required to participate in HAMP for the loans on which it functions as a loan

8    "servicer." Michael J. Heid, who was at the time of signing Co-President of Wells

9    Fargo, executed a Servicer Participation Agreement ("SPA") with the federal

10   government on April 13, 2009, making official Wells Fargo's participation in

11   HAMP, and binding it to comply with the HAMP procedures.

12        26.    On March 16, 2010, Michael J. Heid, as Executive Vice President of

13   Wells Fargo, signed an Amended and Restated SPA, thereby affirming Wells

14   Fargo's participation in HAMP and its commitment to comply with the HAMP

15   procedures.

16        27.    The SPAs executed by Mr. Heid explicitly incorporate all "guidelines

17   and procedures," as well as all "supplemental documentation," "instructions,"

18   "bulletins," "letters," "directives," or "other communications" (generally referred

19   to as "Supplemental Directives") issued by the Treasury, Fannie Mae or Freddie

20   Mac in connection with HAMP. These documents together are referred to as the

21   "Program Documentation," and are incorporated by reference herein. The SPAs

22   mandate that a Participating Servicer "shall perform" the activities described in

23   the Program Documentation "for all mortgage loans it services."

24              **1.    Borrower Eligibility for HAMP**

25        28.    Under HAMP, Wells Fargo is required to calculate whether, by

26   taking certain modification steps, such as reducing the interest rate or extending

27   the term of the loan, the borrower's monthly mortgage payment can be reduced to

28   31% of the borrower's monthly income.

29.    If so, Wells Fargo must then perform a "net present value" (hereinafter, "NPV") analysis, comparing the net present value of cash flow from these modified loan terms to the NPV of the loan without modification.

30.    If the NPV test yields a "positive" outcome (*i.e.*, the value of performing a loan modification exceeds the value of foreclosing on a property), the servicer is required to offer a trial modification, or TPP, under HAMP.  If the NPV test yields a "negative" outcome (*i.e.*, the value of foreclosing on the property exceeds the value of performing a loan modification), Wells Fargo may perform the loan modification in its discretion, and is required to consider the borrower for other foreclosure prevention measures.[3]

31.    For requests for modification initiated prior to June 1, 2010, such as Ms. Kennedy's, servicers had the option to perform an initial evaluation before receiving verified documentation of income.  In this initial evaluation, servicers performed the NPV test based on an unverified verbal report of information from the borrower and verified the information during or after the TPP.  Servicers would then conduct an additional NPV test using the verified information, but only if the verified information did not match the undocumented information initially provided.

### 2.    Trial Period Plan

32.    The TPP consists of a three-month period in which the borrower makes payments based on adjusted loan terms derived from the steps that HAMP requires a servicer to follow.

33.    Wells Fargo offers TPPs to eligible homeowners through a TPP Contract, which describes the homeowner's duties and obligations.  The TPP Contract promises a permanent HAMP modification for those homeowners who make the required payments under the plan and fulfill documentation

---

[3] If Wells Fargo is servicing the mortgage on behalf of a third-party investor, it must have the investor's permission to modify a mortgage loan when the NPV test is negative.

1 | requirements.

2 |      34.    If the homeowner makes all the TPP monthly payments and satisfies
3 | all other trial period requirements, including properly verifying his or her
4 | household income, then the second stage of the HAMP process is triggered, and
5 | Wells Fargo must offer the homeowner a permanent modification.

6 |      **D.**     <u>**WELLS FARGO'S PRACTICES**</u>

7 |      35.    Wells Fargo routinely has failed to comply with its requirements and
8 | responsibilities under HAMP and under its TPP Contracts.

9 |      36.    Throughout the HAMP application process, Wells Fargo repeatedly
10 | and inappropriately demands that borrowers update their application materials,
11 | while warning homeowners that their modification is at risk and threatening to
12 | deny the modification if they fail to comply with Wells Fargo's requests.
13 | Typically, Wells Fargo requests the same document(s) over and over.  In other
14 | instances, it requests documentation that is irrational or impossible to obtain.
15 | Wells Fargo's demands that borrowers submit duplicative or unnecessary
16 | documentation creates opportunities for Wells Fargo to reject otherwise eligible
17 | borrowers for permanent modifications.  The requests for documents are
18 | unnecessary, duplicative, burdensome, and harassing.

19 |      37.    Wells Fargo routinely has failed to comply with the HAMP
20 | guidelines and offer permanent modifications to qualifying homeowners, instead
21 | stringing them along for months and months in trial modifications, or with no
22 | guidance whatsoever.

23 |      38.    Wells Fargo's failure to comply with its obligations under HAMP
24 | and its TPP Contracts, and its failure to comply with the written and oral
25 | representations described above, have serious consequences for borrowers.

26 |      39.    A homeowner's total unpaid balance increases each month that he or
27 | she is making trial payments.  Trial payments are less than the amount ordinarily
28 | due under the mortgage.  The rest of the amount that would ordinarily be due—in

1 | most cases, primarily interest—is not waived.  Instead, the remainder of the

2 | ordinary payment is "recapitalized," or added to the unpaid loan balance at the end

3 | of the trial period.  If the TPP lasts three months, only three months' worth of the

4 | difference between the trial and regular payments is added to the unpaid balance.

5 | If the TPP continues longer than three months, however, homeowners may find

6 | that six, seven, eight or more months' differential has been added to the loan

7 | balance.  The more Wells Fargo delays, the more the homeowners owe.

8 |       40.    Each trial payment has negative credit consequences.  Although

9 | borrowers are paying all that Wells Fargo is asking them to pay—an amount that

10 | will match their payments under a permanent modification—their accounts are not

11 | reported as current to credit scoring agencies.  The more months a borrower

12 | spends in limbo, the more months the borrower's account is reported as

13 | delinquent, and the more months the borrower will have derogatory credit rating.

14 |       41.    Wells Fargo's failure to honor its obligations under HAMP and its

15 | TPP Contracts leaves homeowners in long-term limbo, unsure if they can save

16 | their homes, and unable to make rational decisions about the future.  Money that

17 | could be used to fund bankruptcy plans, relocation costs, short sales, or other

18 | means of curing default continues to be paid in TPP payments that stretch on

19 | indefinitely.

20 | **E.**     **PLAINTIFF'S' EXPERIENCE WITH WELLS FARGO**

21 |       42.    Ms. Kennedy experienced the forgoing problems firsthand.  In May

22 | 2008, she refinanced her home, located at 13723 Ocean Gate Avenue in

23 | Hawthorne, California.

24 |       43.    Over the next year, Ms. Kennedy experienced financial difficulty.

25 | Worried by her financial situation, Ms. Kennedy contacted the servicer for her

26 | home loan, Wells Fargo, to find out whether she could lower her payments.  In

27 | May 2009, Wells Fargo referred Ms. Kennedy to an in-house, non-HAMP

28 | forbearance plan.

44.     Under this plan, Ms. Kennedy's payments would be temporarily lowered for six months, and she would make a large payment in the seventh month. Ms. Kennedy agreed to this plan and authorized automatic bill payment from her deposit account. Despite this arrangement, Wells Fargo canceled the plan for late payment.

45.     Ms. Kennedy applied for another forbearance plan, but was removed from the program under similar circumstances. After both forbearance plans failed, Ms. Kennedy decided to apply for a HAMP modification.

46.     In or around November 2009, Ms. Kennedy applied for a HAMP modification with Wells Fargo. She sent in a complete application and accurately reported her monthly income over the phone.

47.     Wells Fargo determined that Ms. Kennedy qualified for HAMP and offered her a trial plan. Under the trial plan, Ms. Kennedy would make payments of $1,135 for three months and comply with a series of other requirements set by HAMP, such as verifying her reported income. In return, Wells Fargo would permanently modify her loan using HAMP guidelines. Ms. Kennedy made her first trial plan payment in December 2009.

48.     Over the next three months, Ms. Kennedy made her trial payments on time, verified her reported income and complied with all other terms of the agreement. In a letter dated March 31, 2010, Wells Fargo stated that Ms. Kennedy had completed the trial period and was approved for a permanent HAMP modification.

49.     However, the modified payment amount in the documentation provided by Wells Fargo differed significantly from the trial period payment. Ms. Kennedy was making monthly payments of $1,135 in her trial period plan, but the permanent modification monthly payment amount was set at $2,058.38, an amount much greater than the trial period payment and more than 31% of Ms. Kennedy's gross monthly income.

50.   The letter that Ms. Kennedy received from Wells Fargo stated that the final modification payment had increased due to a change in her income at the time of final approval.  But, Ms. Kennedy's financial situation had not changed over this time period.  At all relevant times, she was employed as a full-time legal secretary, and her income did not increase.  Because her income did not change, the verification she provided Wells Fargo matched exactly the income information she had provided over the phone, and her payment on the permanent modification likewise should have matched her payment in the trial plan.

51.   After receiving the letter, Ms. Kennedy called Robin Webb, the Wells Fargo employee who had sent it.  During the course of their conversation, Ms. Webb made references to financial details, such as a large car payment, that did not match Ms. Kennedy's situation.  When Ms. Kennedy directed Ms. Webb's attention to the errors, Ms. Webb acknowledged that the permanent modification was based on the wrong financial information.

52.   Ms. Webb told Ms. Kennedy not to sign and return the modification agreement.  Instead, she instructed Ms. Kennedy to send in a new form with her financial information.  Upon receipt of the form, Wells Fargo would put Ms. Kennedy's application on the "fast-track" to permanent modification under the appropriate terms.  This process would take about four weeks, and then Ms. Kennedy would have a permanent modification on the original terms.

53.   Ms. Kennedy did as Ms. Webb instructed her, but in May, Ms. Kennedy received a letter from Wells Fargo stating that her loan modification request had been denied because she did not mail the agreement back to Wells Fargo.

54.   Later that month, Ms. Kennedy was contacted by Wells Fargo about her loan.  During that discussion, Ms. Kennedy was told that she was not in the HAMP program and did not have an application on file.  She was told that she could not get a HAMP modification because she had failed to return the

Class Action Complaint; Demand for Jury Trial

1   modification agreement.  Eventually, Ms. Kennedy accepted a non-HAMP

2   modification from Wells Fargo on less advantageous terms.

3   **VII.   <u>CLASS ACTION ALLEGATIONS</u>**

4        55.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff

5   Kathleen Kennedy brings this action as a class action on behalf of herself and all

6   others similarly situated as members of a proposed nationwide class.  This

7   putative class (hereinafter the "Plaintiff Class") is defined as follows:

8        All borrowers whose loans have been serviced by Wells Fargo, who

9        have been eligible for permanent modification under the terms of

10       HAMP, and whose loan Wells Fargo has not permanently modified,

11       because 1) they did not receive a permanent loan modification after

12       complying with their obligations under HAMP, as conveyed to them

13       by Wells Fargo either orally or in writing; or 2) they received a

14       permanent modification, but Wells Fargo withdrew it after the

15       permanent modification already was in effect.

16       56.    This putative class action meets the requirements of Fed. R. Civ. P.

17   23(a), Fed. R. Civ. P. 23(b)(2), and Fed. R. Civ. P. 23(b)(3).

18       57.    California law applies to all Plaintiff Class members nationwide

19   because Plaintiff is informed and believes that the conduct at issue emanated from

20   California.

21       58.    All members of the class have been subject to and affected by the

22   same conduct.  Wells Fargo has engaged in a common course of conduct with

23   respect to all HAMP modifications.

24       59.    Plaintiff is informed and believes and on that basis alleges that the

25   Plaintiff Class is so numerous that joinder of the individual claims is

26   impracticable.  The precise number of the Plaintiff Class and the identities of the

27   members are ascertainable from the business records of Wells Fargo.

28       60.    Questions of law and fact common to the Plaintiff Class exist and

1  predominate over questions affecting only individual class members.  These
2  common legal and factual questions include, but are not limited to:

3      a.    Whether Wells Fargo violated the Rosenthal Fair Debt
4  Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.*
5  ("Rosenthal Act"), by, without limitation, making false,
6  deceptive or misleading representations in connection with the
7  collection of any debt, using false representations or deceptive
8  means to collect or attempt to collect on any debt, and using
9  unfair or unconscionable means to collect or attempt to collect
10  any debt;

11      b.    Whether Wells Fargo's acts described above are unlawful,
12  unfair, or fraudulent business practices in violation of the
13  Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et*
14  *seq.* ("UCL");

15      c.    Whether Wells Fargo has violated the duty of good faith and
16  fair dealing, inherent in all contracts, including whether the
17  failure to provide permanent HAMP modifications constitutes
18  a breach of the covenant of good faith and fair dealing;

19      d.    Whether Wells Fargo breached the TPP Contract with
20  members of the Plaintiff Class by failing to offer them
21  permanent HAMP modifications at the close of their
22  successfully completed trial periods;

23      e.    Whether Wells Fargo was negligent in its conduct alleged
24  herein;

25      f.    Whether Wells Fargo made representations that Plaintiff and
26  members of the Plaintiff Class would receive a permanent
27  HAMP modification, representations upon which Plaintiff and
28  Plaintiff Class members reasonably relied to their detriment;

1    and

2    g.    The nature and extent of relief to Plaintiff and the Plaintiff

3          Class, including declaratory judgment, accounting, injunctive

4          relief, restitution, and other remedies to which Plaintiff and the

5          other members of the Plaintiff Class are entitled.

6    61.   Plaintiff's claims are typical of the claims of the Plaintiff Class as the

7    claims arise from the same course of conduct by Wells Fargo, and the relief

8    sought is common.  Each member of the Plaintiff Class requested or was

9    otherwise eligible for permanent modification under HAMP and met with the

10   same failure.  Each member of the Plaintiff Class has the same or substantially

11   similar claims as Plaintiff for relief against these practices.  As described above

12   and below, the claims arise from the same course of conduct by Wells Fargo, and

13   the relief sought is common.

14   62.   Plaintiff is an adequate representative of the Plaintiff Class because:

15   (a) her interests do not conflict with the interests of the individual members of the

16   Plaintiff Class she seeks to represent; (b) she has retained counsel who are

17   competent and experienced in complex class action litigation; and (c) she intends

18   to prosecute this action vigorously.  The interests of the members of the Plaintiff

19   Class will be fairly and adequately protected by Plaintiff and her counsel.

20   63.   The class action device is superior to other available means for the

21   fair and efficient adjudication of the claims of Plaintiff and the Plaintiff Class.

22   Because the economic damages suffered by the individual Plaintiff Class members

23   may be relatively modest, albeit significant, compared to the expense and burden

24   of individual litigation, requiring members of the Plaintiff Class to seek redress

25   individually for the wrongful conduct alleged herein would be impracticable.

26   64.   Additionally, prosecuting separate actions by individual Plaintiff

27   Class members would create a risk of varying adjudications with respect to

28   individual Plaintiff Class members that would establish incompatible standards of

1   conduct for Wells Fargo.  Wells Fargo has acted on grounds that apply generally

2   to the Plaintiff Class members, so that final injunctive relief is appropriate with

3   respect to the Plaintiff Class as a whole.

4         65.    There will be no undue difficulty in the management of this litigation

5   as a class action.  Plaintiff's and the Plaintiff Class members' common claims can

6   be economically adjudicated only in a class action proceeding, thus promoting

7   judicial efficiency and avoiding multiple trials and inconsistent judgments.

8         66.    Plaintiff believes that notice to the Plaintiff Class is necessary and

9   proposes that notice of this class action be provided by individual mailings to

10   Plaintiff Class members and/or by publication in national publications.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

13         67.    Plaintiff, on behalf of herself and on behalf of the Plaintiff Class,

14   realleges each and every preceding and subsequent allegation as if fully set forth

15   in this Cause of Action.

16         68.    Plaintiff and Plaintiff Class members entered into written or oral

17   Trial Period Plan ("TPP") Contracts with Wells Fargo.  Wells Fargo made TPP

18   offers, through formal TPP Contracts, oral TPP offers, or written TPP offers.

19   Plaintiff and Plaintiff Class members formed binding and enforceable agreements

20   when they executed written TPP Contracts and/or when they made payments

21   under a TPP offered orally or in writing by Wells Fargo.  Payments in accordance

22   with an executed TPP Contract or TPP offer constitute consideration.  In the

23   alternative, the TPP Contracts or offers, coupled with Plaintiff's payments,

24   constitute implied contracts.

25         69.    Wells Fargo failed to perform under the TPP Contracts with Plaintiff

26   and Plaintiff Class members.  Wells Fargo's refusal to perform its duties under the

27   TPP Contracts was unlawful, without justification and/or excuse, and constituted a

28   total and material breach of the TPP Contracts between the parties.

70.     Wells Fargo breached the TPP Contracts with Plaintiff Class members by failing to offer them permanent HAMP modifications after they made their TPP payments, properly verified their reported income and complied with all other terms of the TPP Contract.

71.     Plaintiff and all members of the Plaintiff Class gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Wells Fargo. Consideration provided by Plaintiff Class members includes, but is not limited to, providing verification of income, making adjusted payments, increased indebtedness, suffering negative credit reporting, and making insurance payments into an escrow account

72.     As a result of Wells Fargo's breach of the TPP Contracts, Plaintiff and Plaintiff Class members suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including payment of increased interest, longer loan payoff times, higher principal balances, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages for breach of contract.

73.     Plaintiff and the Plaintiff Class have been damaged by Wells Fargo's breach of the TPP Contracts in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF STATE FAIR DEBT COLLECTION ACT

(Violation of the Rosenthal Fair Debt Collection Practices Act,

Cal. Civ. Code §§ 1788, *et seq.*)

74.     Plaintiff, on behalf of herself and on behalf of the Plaintiff Class, realleges each and every preceding and subsequent allegation as if fully set forth in this Cause of Action.

1    75.   Wells Fargo is a "debt collector" within the meaning of Cal. Civil

2    Code § 1788.2(c).  The monies allegedly owed by the members of the proposed

3    classes are "debts" within the meaning of Cal. Civil Code § 1788.2(d).

4    76.   California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ.

5    Code §§ 1788, *et seq.* ("Rosenthal Act"), incorporates by reference, and requires

6    compliance with, the provisions of the federal Fair Debt Collection Practices Act,

7    15 U.S.C. §§ 1692, *et seq.*  Cal. Civ. Code § 1788.17.

8    77.   By the acts and practices described herein, Wells Fargo has violated

9    these laws, as follows, without limitation:

10             a.    Making false, deceptive, or misleading representations in

11             connection with the collection of a debt, 15 U.S.C. § 1692e;

12             b.    Making false representations or using deceptive means to

13             collect or attempt to collect on a debt, 15 U.S.C. § 1692e(10); and

14             c.    Using unfair or unconscionable means to collect or attempt to

15             collect a debt, 15 U.S.C. § 1692f.

16    78.   Pursuant to California Civil Code sections 1788.30 and 1788.17,

17    Plaintiff and the Plaintiff Class are entitled to recover actual damages sustained as

18    a result of Wells Fargo's violations of the Rosenthal Act.  Such damages include,

19    without limitation, monetary losses and damages and emotional distress suffered;

20    the damages are in an amount to be proven at trial.  In addition, pursuant to

21    California Civil Code sections 1788.30 and 1788.17, because Wells Fargo

22    willingly and knowingly violated the Rosenthal Act, Plaintiff and the Plaintiff

23    Class are entitled to recover penalties of at least $1,000 per violation as provided

24    for in the Rosenthal Act.

25    ### THIRD CAUSE OF ACTION

26    ### VIOLATION OF THE UNFAIR COMPETITION LAW

27    (Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

28    79.   Plaintiff, on behalf of herself and on behalf of the Plaintiff Class,

realleges each and every preceding and subsequent allegation as if fully set forth in this Cause of Action.

80.     The California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200. The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

81.     Wells Fargo's acts and practices alleged herein are unlawful business practices in that they violate state law, including but not limited to violations of the Rosenthal Act, as alleged in this Complaint.

82.     Wells Fargo's acts and practices alleged herein constitute unfair business practices, including, without limitation, the following practices:

> a.      Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff and the Plaintiff Class and its responsibilities under HAMP;
>
> b.      Failing to properly supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;
>
> c.      Failing to permanently modify loans and/or provide alternatives to foreclosure and using unfair means to keep Plaintiff and the Plaintiff Class in temporary modification contracts, including, without limitation, routinely demanding information it already has and failing to communicate accurately or consistently with borrowers about the status of their loan modification applications;

1            d.      Making inaccurate calculations and determinations of

2            Plaintiff's and the Plaintiff Class members' eligibility for a

3            permanent modification; and

4            e.      Engaging in acts and practices that prolong the HAMP process.

5       83.      Wells Fargo's acts and practices alleged herein constitute fraudulent

6 business practices, including, without limitation, the following practices:

7            a.      Wells Fargo has made and continues to make

8            misrepresentations and omissions of material fact that induce

9            Plaintiff and Plaintiff Class members to enter into TPP Contracts in

10            order to obtain a permanent modification; and

11            b.      Wells Fargo has made and continues to make

12            misrepresentations and omissions of material fact regarding the status

13            of Plaintiff's and Plaintiff Class members' loan modifications and

14            loan payments.

15       84.      Wells Fargo's misrepresentations and omissions are likely to deceive

16 the reasonable consumer.

17       85.      Wells Fargo's misrepresentations are objectively material to the

18 reasonable consumer; reliance upon such representations therefore may be

19 presumed as a matter of law.

20       86.      Plaintiff reasonably and justifiably relied on such misrepresentations

21 and omissions of material fact regarding the status of her loan modifications and

22 loan payments.

23       87.      As a result of these violations and unlawful, unfair, and fraudulent

24 business practices, Plaintiff and Plaintiff Class members suffered injury in fact

25 and lost money and property, including but not limited to, payment of increased

26 interest, longer loan payoff times, higher principal balances, and payment of other

27 charges collected by Wells Fargo.

28       88.      Wells Fargo, through its acts of unfair competition and unlawful,

1  unfair, and fraudulent business practices, has acquired money from Plaintiff and

2  Plaintiff Class members.  Thus, Plaintiff and Plaintiff Class members request that

3  this Court restore that money to them and order disgorgement.

4       89.    Pursuant to California Business and Professions Code sections

5  17200, *et seq.*, Plaintiff and the Plaintiff Class are entitled to enjoin Wells Fargo's

6  practice of unfairly denying and failing to enter into permanent loan modifications

7  for homeowners who have complied with the contractual obligations of the TPP

8  Contract.  Plaintiff and Plaintiff Class members seek such other and further relief

9  as the Court may deem proper and just.

10  **FOURTH CAUSE OF ACTION**

11  **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

12       90.    Plaintiff, on behalf of herself and on behalf of the Plaintiff Class,

13  realleges each and every preceding and subsequent allegation as if fully set forth

14  in this Cause of Action.

15       91.    Under common law, a covenant of good faith and fair dealing is

16  implied in every contract, including the written and oral TPP Contracts described

17  above, that prevents one contracting party from unfairly frustrating the other

18  party's right to receive the benefits of the contract.  Wells Fargo is obligated to act

19  in good faith and deal fairly with each borrower who enters into a TPP Contract.

20       92.    Wells Fargo has violated and continues to violate this covenant of

21  good faith and fair dealing in its TPP Contracts with Plaintiff and Plaintiff Class

22  members by, *inter alia*:

23           a.    Failing to perform loan servicing functions consistent with its

24                responsibilities;

25           b.    Failing to properly supervise its agents and employees,

26                including without limitation, its loss mitigation and collection

27                personnel, foreclosure personnel, and personnel implementing its

28                modification programs;

1          c.    Failing to permanently modify loans and/or provide

2          alternatives to foreclosure and using unfair means to keep Plaintiff

3          and Plaintiff Class members in temporary modification contracts,

4          including, without limitation, routinely demanding information it

5          already has and failing to communicate accurately or consistently

6          with borrowers about the status of their loan modification

7          applications; and

8          d.    Making inaccurate calculations and determinations of

9          eligibility for trial or permanent modifications.

10     93.    Plaintiff and Plaintiff Class members remain ready, willing, and able

11     to enter into a permanent HAMP modification.

12     94.    As a result of Wells Fargo's breach of this implied covenant, Plaintiff

13     and Plaintiff Class members suffered and will continue to suffer reasonable and

14     foreseeable consequential damages resulting from such breaches, including

15     payment of increased interest, longer loan payoff times, higher principal balances,

16     and other damages for breach of contract.  Plaintiff and Plaintiff Class members

17     have been damaged by Wells Fargo's breach of the implied covenant of good faith

18     and fair dealing in an amount to be proven at trial.

19                          **FIFTH CAUSE OF ACTION**

20                               **NEGLIGENCE**

21     95.    Plaintiff, on behalf of herself and on behalf of the Plaintiff Class,

22     realleges each and every preceding and subsequent allegation as if fully set forth

23     in this Cause of Action.

24     96.    Wells Fargo owed a duty of due care to Plaintiff and Plaintiff Class

25     members to competently process loan modifications in accordance with HAMP,

26     as alleged herein.

27     97.    Wells Fargo breached its duty of care to Plaintiff and Plaintiff Class

28     members by failing to comply with HAMP, as alleged herein.

98.    Wells Fargo's breach of its duties is the direct, legal, and proximate cause of Plaintiff's and Plaintiff Class members' injuries.

99.    As a result of Wells Fargo's breach of its duty, Plaintiff and Plaintiff Class members suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including payment of increased interest, longer loan payoff times, higher principal balances, and other damages for breach of contract.  Plaintiff and Plaintiff Class members have been damaged by Wells Fargo's negligence in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**PROMISSORY ESTOPPEL, IN THE ALTERNATIVE**

100.    Plaintiff, on behalf of herself and on behalf of the Plaintiff Class, realleges each and every preceding and subsequent allegation as if fully set forth in this Cause of Action.

101.    Wells Fargo, by way of the TPP Contracts described above, made representations to Plaintiff and Plaintiff Class members that if they agreed to the terms of a TPP proposal, either by returning an executed TPP Contract, or making the proposed trial payments, they would receive a permanent HAMP modification.

102.    Wells Fargo's TPP Contracts were intended to induce Plaintiff and Plaintiff Class members to rely on them and make monthly TPP payments. Plaintiff and Plaintiff Class members did, indeed, rely on Wells Fargo's representations, by submitting TPP payments.  The reliance of Plaintiff and Plaintiff Class members was reasonable.

103.    The reliance of Plaintiff and Plaintiff Class members was to their detriment.  For example, those who complied with the TPP Contracts but were denied a permanent modification, and those who have yet to receive permanent HAMP modifications and are still making TPP payments, have lost the opportunity to fund other strategies to deal with their default and avoid foreclosure.

104.   Plaintiff and Plaintiff Class members have been damaged by Wells Fargo's actions and representations in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Wells Fargo as follows:

1.   An order certifying the Plaintiff Class under Federal Rules of Civil Procedure, Rule 23, and appointing Plaintiff Kathleen Kennedy to be class representative and her counsel to be class counsel;

2.   An award to Plaintiff and Plaintiff Class members of actual and statutory damages in an amount according to proof for Wells Fargo's violations of the Rosenthal Act, breach of contract, breach of covenant of good faith and fair dealing, negligence, and promissory estoppel;

3.   An order requiring Wells Fargo to make restitution to Plaintiff and Plaintiff Class members pursuant to California Business and Professions Code section 17203;

4.   A judgment declaring Wells Fargo's acts and practices complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing and to be unlawful, unfair, and fraudulent, as well as a declaration that Wells Fargo is required by the doctrine of promissory estoppel to offer permanent modifications to class members;

5.   A permanent order enjoining Wells Fargo's agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff and Plaintiff Class members by engaging in the unlawful, unfair and fraudulent practices alleged herein and ordering specific performance of Wells Fargo's contractual obligations, under the TPP Contracts, together with other relief required by contract and law;

6.   An award to Plaintiff of the costs of this action, including the fees and costs of experts, together with reasonable attorney's fees, cost and expenses;

7.   An award to Plaintiff and Plaintiff Class members of pre-judgment

1    interest on all sums collected; and

2         8.      Such other and further relief as this Court finds necessary and proper.

3    Dated:  May 31, 2011                    Respectfully submitted,

4                                            STRANGE & CARPENTER
5                                            PUBLIC COUNSEL

6

7                                            By: _____
8                                            Gretchen Carpenter
                                             Attorneys for Plaintiff
9

10                          **DEMAND FOR JURY TRIAL**

11         Plaintiff hereby demands a trial by jury.

12

13   Dated:  May 31, 2011                    Respectfully submitted,

14                                           STRANGE & CARPENTER
15                                           PUBLIC COUNSEL

16

17                                           By: _____
18                                           Gretchen Carpenter
                                             Attorneys for Plaintiff
19

20

21

22

23

24

25

26

27

28

Class Action Complaint; Demand for Jury Trial

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV11- 4635 DDP (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X]  **Western Division**
     **312 N. Spring St., Rm. G-8**
     **Los Angeles, CA 90012**

[ ]  **Southern Division**
     **411 West Fourth St., Rm. 1-053**
     **Santa Ana, CA 92701-4516**

[ ]  **Eastern Division**
     **3470 Twelfth St., Rm. 134**
     **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)       NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY



Brian R. Strange, 103252  Tel: (310) 207-5055
Gretchen Carpenter, 180525
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| KATHLEEN KENNEDY, on behalf of herself and all others similarly situated                          PLAINTIFF(S) <br><br> v. <br><br><br> WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE and DOES 1-10 <br><br><br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV11  04635DDP** (AGRx) <br><br><br> **SUMMONS** |
| --- | --- |

TO:     DEFENDANT(S): <u>WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE and DOES 10-10</u>

---

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Brian R. Strange, Strange & Carpenter</u> , whose address is <u>12100 Wilshire Blvd., Suite 1900, Los Angeles, California 90025</u> .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____MAY 3 1 2011____

By: _____CHRISTOPHER POWERS_____
   Deputy Clerk

*(Seal of the Court)*

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

---

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>KATHLEEN KENNEDY, on behalf of herself and all others<br>similarly situated | **DEFENDANTS**<br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE and DOES 1-10 |
| **(b)** Attorneys (Firm Name, Address and Telephone Number.<br>If you are representing yourself, provide same.)<br>Gretchen Carpenter, 180525    Tel: (310) 207-5055<br>STRANGE & CARPENTER<br>12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025 | Attorneys (If Known)<br>Unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ over $5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This class action is filed pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. section 1332(d)(2).

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11   04635

FOR OFFICE USE ONLY:     Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s):  2:10-cv-3792-DSF-PLA, 2:10-cv-8836-DDP-SS

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Francisco County |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | San Francisco County |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _Kristhen Carpenter_   Date  May 31, 2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |